# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06-316 (JRT/RLE) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| THOMAS BERNARD CLOUD, JR., | |
| Defendant. | |

Erica H. MacDonald, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

John C. Brink, **BRINK LAW OFFICE**, Suite 840, 401 Second Avenue South, Minneapolis, MN 55401, for defendant.

This matter is before the Court on defendant's motions to suppress certain evidence and statements in violation of the Fourth and Fifth Amendments of the United States Constitution. Defendant was charged with one count of possession of a firearm by a felon. In a Report and Recommendation dated November 17, 2006, United States Magistrate Judge Raymond L. Erickson recommended that this Court deny defendant's motions to suppress. The defendant timely objected to the Report and Recommendation. The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b). For the reasons discussed below, the Court adopts the Report and Recommendation of the Magistrate Judge and denies defendant's motions to suppress.

## BACKGROUND

On March 21, 2006, Itasca County Deputy Robert LeClair was working routine patrol on Minnesota Highway 46 near Deer River, Minnesota. At approximately 10:00 p.m., LeClair observed a gray Cadillac pull out of a gas station and begin traveling north on Highway 46 in front of LeClair's squad car. The Cadillac did not appear to have a rear license plate, and LeClair could see no visible temporary registration sticker on the vehicle, as required by Minnesota statute. Minn. Stat. §§ 168.092, subd. 1; 169.79, subd. 6. LeClair followed the vehicle for approximately two miles. During this time, LeClair observed the Cadillac cross the centerline of the highway into the southbound traffic lane on two or three occasions. In addition, LeClair saw the vehicle cross the highway fog line onto the right shoulder several times.[1] Based on his observations, LeClair suspected the driver of the vehicle may have been impaired and decided to stop the Cadillac to investigate.

As LeClair approached the vehicle, he saw a yellow registration tag on the back window. He asked the driver for her driver's license and insurance information. Defendant was seated in the front passenger seat of the vehicle. LeClair shined his flashlight into the vehicle and observed that the driver, the defendant, and a back seat passenger were not wearing seat belts.[2] LeClair testified that he had observed no activity

---

[1] Vehicles are prohibited by law from crossing over the centerline or the fog line on the shoulder of the roadway. Minn. Stat. §§ 169.18, subd. 1, 7(a).

[2] Minnesota law requires occupants of the front seat to wear a seat belt when the car is operating. Minn. Stat. § 169.686.

inside the vehicle during his approach that would suggest that the occupants had removed their seatbelts immediately after the vehicle was stopped.

The driver of the vehicle did not produce a driver's license but provided LeClair with her name and date of birth. LeClair then asked about the vehicle license plates, and the driver explained that she had just purchased the Cadillac from a dealership in Moorhead, Minnesota. LeClair testified that he detected no sign of intoxication on the part of the driver. During his conversation with the driver, however, LeClair noticed that the defendant front seat passenger stared straight ahead, fumbled with his hands, and appeared very nervous. Based on LeClair's training and experience, he found defendant's behavior to be odd, and asked both defendant and a female rear seat passenger for a driver's license. Defendant, still staring straight ahead and fidgeting with his hands, responded that he did not have a driver's license. LeClair asked defendant for his name and date of birth. Defendant told LeClair that his name was Kristopher Leigh Fisher and provided him with a birth date.

Based on the behavior of the occupants, LeClair decided to investigate further to ensure that the Cadillac was not stolen, and returned to his squad car to run a driver's license check on the occupants. The defendant's identification was not on file, meaning that defendant had given false information or that defendant's name was misspelled. LeClair therefore returned to the vehicle to verify defendant's identity. LeClair asked defendant to exit the vehicle and accompany him to the squad car to discuss the spelling of his name. The defendant exited the vehicle and followed LeClair to an area between the Cadillac and the front of the squad car. As they spoke, LeClair noticed that defendant

was extremely nervous and his arms and legs were shaking. At that point, a dispatcher notified LeClair that there were two active Arrest Warrants for a "Kristopher Fisher," and that the defendant could go free if he posted $630 bail to satisfy the terms of the Warrants. The defendant told LeClair that he could retrieve the money from his residence. LeClair responded that he would take defendant to his residence to obtain the money. LeClair then handcuffed defendant and placed him in the squad car. According to LeClair, roughly ten minutes elapsed between the initial stop and the time he learned of the outstanding warrants.

LeClair then returned to the Cadillac to inform the other occupants that he would take defendant to retrieve the bail money. He opened the passenger door and the overhead dome light went on, revealing in plain view the handle of a firearm lying on the floor of the passenger side. LeClair later testified that he would have been able to see the firearm from the street if he had looked into the car with his flashlight. LeClair seized the weapon, and removed and handcuffed the two remaining female occupants. The two occupants denied having any knowledge of the gun. LeClair then transported defendant to the Itasca County Jail.[3]

LeClair led defendant to an interview room and advised him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant did not initially respond to the *Miranda* warning, but continued to ask LeClair to explain to him why LeClair had

---

[3] Defendant again identified himself at the booking as "Kristopher Fisher." However, it was later determined that defendant had provided a false identity to LeClair. Defendant's true identity is Thomas Bernard Cloud. LeClair testified that Cloud had thirteen prior felony convictions.

brought him to the county jail instead of to his residence to retrieve the bail money. Then the following exchange occurred:

> *Defendant*: Whatever you're tryin' to -- whatever you're tryin' -- whatever issues you're tryin' bring me here for. I don't know shit about it, cuz I don't even still understand why I'm here. You said you're gonna take me to get my money and that was it.
>
> *LeClair*: Okay. Do you wish to speak with an attorney?
>
> *Defendant*: Yeah. Probably. Cuz you ain't explaining nothing'.
>
> *LeClair*: Do you want - do you want to talk to an attorney, or do you want me to explain things or -- or don't you want to talk. You know. I got to know before I get into detail here if you're willing ah -- talk to me or not. That's what I need to know.
>
> *Defendant*: No, I just want to get my money and leave.
>
> *LeClair*: Well that's not gonna happen right now. And we need to talk about why that's not gonna happen.
>
> *Defendant*: Well why? Tell me.

(Government's Ex. 2, at 1-4.)

After this exchange, LeClair questioned defendant on the details of that evening. The defendant repeatedly denied having knowledge or possession of the handgun in question. The defendant was subsequently charged with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

## ANALYSIS

**I.   MOTION TO SUPPRESS EVIDENCE**

Defendant argues that the Magistrate Judge erred in denying his motion to suppress evidence obtained as a result of an illegal seizure in violation of the Fourth

Amendment. The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *United States v. Roby*, 122 F.3d 1120, 1123 (8th Cir. 1997). A brief investigatory stop by police requires reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). A *Terry* stop is lawful where the officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

Defendant does not contest the reasonableness of LeClair's initial stop of the Cadillac. *See United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004) (holding that a traffic violation provides an officer with probable cause to stop the driver of a vehicle and conduct a reasonable investigation). Rather, defendant argues that LeClair's decision to inquire into the defendant's identity exceeded the scope of an otherwise legitimate seizure under the Fourth Amendment. Defendant argues that once LeClair determined that the Cadillac had a valid registration sticker, and that the driver was not impaired, any reasonable suspicion justifying the initial stop vanished. However, an officer may question a vehicle's passengers to verify information provided by the driver. *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005). In addition, the Eighth Circuit has held that an officer's request for a passenger's identification during a routine traffic stop does not violate the Fourth Amendment, even if the request is unrelated to the initial purpose of the stop. *United States v. Slater*, 411 F.3d 1003, 1005 (8th Cir. 2005). For these reasons, the Court agrees with the Magistrate Judge that defendant was not unreasonably seized in violation of the Fourth Amendment when LeClair asked him to identify himself during the traffic stop.

Defendant further argues that he was unreasonably seized during the ten-minute period when LeClair sought to verify defendant's identity because there was no particularized reasonable suspicion as to the defendant. Defendant argues that LeClair's observation of defendant's nervousness cannot, by itself, provide reasonable suspicion necessary to justify the seizure. *See United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998). The Magistrate Judge concluded that LeClair nonetheless had reasonable suspicion sufficiently particularized to the defendant to justify the seizure. The Court agrees. The duration of the seizure resulted primarily from LeClair's investigation into the defendant's identity. The fact that a search for defendant's name yielded no results, combined with LeClair's observations of defendant's nervousness and odd behavior, created reasonable suspicion that defendant had provided a false name in violation of Minnesota law. As such, the Court finds that LeClair's limited seizure of defendant to ascertain defendant's identity was not unreasonable under the Fourth Amendment.

Finally, defendant argues that the search of the vehicle incident to defendant's arrest, and the subsequent seizure of the firearm, should be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963). Under the "fruit of the poisonous tree" doctrine, "the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987). Because LeClair's initial seizure of defendant was not constitutionally infirm, the Court finds that evidence obtained from the subsequent search of the vehicle and seizure of the firearm need not be suppressed. For the same reason, statements made by the defendant,

as well as defendant's fingerprints and DNA samples, should not be suppressed. As such, defendant's motion to suppress evidence is denied.

## II.  MOTION TO SUPPRESS STATEMENTS

Under *Miranda v. Arizona*, *Miranda* warnings must be given any time a suspect is in custody and subject to interrogation by law enforcement officials.  *See* 384 U.S. 436, 484 (1966).  "If the individual indicates in any manner that he wishes to remain silent, the interrogation must cease."  *Id.* at 473-74.  Further, when the accused asks for counsel, he cannot be subjected to further interrogation until counsel has been made available, unless the accused himself initiates further communication.  *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  Only a "clear and unequivocal request for the assistance of counsel may serve to invoke defendant's right."  *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003) (finding statement "do you know any good attorneys?" insufficient to invoke defendant's right to counsel); *see also Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (finding that the statement "[c]ould I call my lawyer," made immediately after defendant had asked if he could call his girlfriend, was not an unequivocal request for counsel).  Although it is good police policy to clarify ambiguous statements, officers are not constitutionally required to do so.  *Kelly*, 329 F.3d at 630 (citing *Davis v. United States*, 512 U.S. 452, 455, 459-61 (1994)).

After reading defendant's *Miranda* rights, LeClair attempted to clarify whether defendant was asserting his Fifth Amendment right to counsel.  In response to LeClair's question, defendant responded "Yeah.  Probably.  Cuz you ain't explaining nothin'." (Government's Ex. 2, at 4.)  The Court finds that this statement, viewed in context, is not

a clear and unequivocal request for counsel.  Defendant's response suggests that he wished to continue to engage in the give and take of the interview in an attempt to decipher what charges might be brought against him.  When LeClair again asked defendant whether he wanted to speak with an attorney, defendant responded ambiguously that he just wanted to get his money and leave.  The Court finds that defendant's statements do not constitute a clear and unequivocal request for counsel.  As such, defendant's motion to suppress the statements on grounds that his *Miranda* rights were violated is denied.

### ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant's objection [Docket No. 30] and **ADOPTS** the Magistrate Judge's November 17, 2006 Report and Recommendation [Docket No. 28]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to suppress evidence obtained as a result of any illegal searches or seizures [Docket No. 14] is **DENIED**.

2. Defendant's motion to suppress any evidence obtained as a result of any illegal interrogations [Docket No. 15] is **DENIED**.


DATED:   January 16, 2007                     s/ John R. Tunheim
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                              United States District Judge